# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BARBARA E. BACHELOR and**
**RICHARD D. BACHELOR,**

      **Plaintiffs,**

**v.**                                                             **Case No:  6:16-cv-68-Orl-28KRS**

**JOSHUA EVANS,**

      **Defendant.**

_____/

**JOSHUA EVANS,**

      **Third-Party Plaintiff,**

**v.**

**DAVID RICHARD BACHELOR,**

      **Third-Party Defendant.**

_____/

## ORDER

This action brought pursuant to 42 U.S.C. § 1983 is before the Court on the Motion to Dismiss Amended Third-Party Complaint (Doc. 23) filed by Third-Party Defendant David Bachelor ("David").  As set forth below, the motion is granted.

**I.**      **Background**[1]

In the early morning hours of November 18, 2013, Joshua Evans, a Florida Highway Patrol Trooper, observed David driving a car and suspected that he was driving under the influence of alcohol or drugs.  (Compl., Doc. 1, ¶¶ 9–10).  Trooper Evans chased David in

_____

[1] The Background section is derived from the allegations of the Complaint (Doc. 1) and the Amended Third-Party Complaint (Doc. 16).

his patrol car for seventeen minutes, following him to the home where 40-year-old David lived with his parents, 72-year-old Barbara Bachelor and 71-year-old Richard Bachelor. (Id. ¶¶ 5, 6, 8, & 11).  As David went into the home with Trooper Evans running after him, Trooper Evans pulled out his Taser in an attempt to stop David from closing the front door. (Id. ¶¶ 12–14).  Trooper Evans "forced his arm into [the home] and dropped his Taser within the . . . [h]ome before the front door was closed."  (Id. ¶ 15).

David then closed the door, leaving Trooper Evans standing outside.  (Id. ¶ 16). Knowing that the Bachelors were inside the home near the front door, Trooper Evans then "pulled his Glock 37 and fired seven (7) shots directly into the front door."  (Id. ¶¶ 17–18). One of the bullets struck David in the head but did not cause life-threatening injuries; the other bullets "barely missed" Barbara and Richard and damaged the home.  (Id. ¶ 22). After the Bachelors exited the home, Trooper Evans entered and searched the home without a search warrant or the Bachelors' consent.  (Id. ¶ 24).  Trooper Evans then detained Barbara and Richard for several hours.  (Id. ¶ 25).

On January 15, 2016, Barbara and Richard ("Plaintiffs") filed this suit against Trooper Evans, bringing claims of illegal search (Count I), excessive force (Count II), and illegal seizure (Count III), alleging in each count a violation of the Fourth and Fourteenth Amendments to the United States Constitution.  (Doc. 1).  Trooper Evans filed an Answer (Doc. 8) to the Complaint and later filed a Third-Party Complaint (Doc. 13) and Amended Third-Party Complaint (Doc. 16) against David pursuant to Federal Rule of Civil Procedure 14, bringing a claim for contribution.[2]

---

[2] Because Trooper Evans filed the Third-Party Complaint within fourteen days of filing his Answer, leave of court was not required.  See Fed. R. Civ. P. 14(a)(1) (providing that a defending party "must, by motion, obtain the court's leave if it files the third-party

In his Amended Third-Party Complaint, Trooper Evans alleges that while he was trying to immobilize David with the Taser, David "repeatedly and violently smash[ed] the heavy door onto [Trooper Evans's] hand [and] arm, . . . causing the Taser to fall out of [Trooper Evans's] hand and drop within the interior of the Bachelors' home." (Doc. 16 ¶ 8). Trooper Evans acknowledges "discharge[ing] his firearm into the doorway," asserting that he did so "with a reasonable apprehension and fear of serious bodily harm and/or death." (Id. ¶ 9). Trooper Evans alleges that "[a]ll of the alleged 'civil rights violations' as alleged by Plaintiffs are the direct and foreseeable result of the wrongful, obstructive and criminal actions of" David. (Id. ¶ 14). Trooper Evans contends that if he is held liable to Plaintiffs, he is entitled to contribution from David "as a result of [David's] unlawful, obstructive and wrongful acts." (Id. ¶ 15). The Amended Third-Party Complaint notes that David pleaded guilty to several criminal offenses based on the events of the morning in question, including: driving under the influence; battery on three law enforcement officers, including Trooper Evans; resisting an officer with violence; and fleeing or attempting to elude a law enforcement officer at high speed or with wanton disregard. (Id. ¶ 11).[3] David now moves to dismiss the Amended Third-Party Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that it fails to state a claim for which relief can be granted. (Mot., Doc. 23). Trooper Evans has responded. (Doc. 24).

## II.   Discussion

Federal Rule of Civil Procedure 14(a)(1) provides that "[a] defending party may, as

---

complaint more than 14 days after serving its original answer").

[3] In his Response (Doc. 24) to David's motion to dismiss, Trooper Evans requests that the Court take judicial notice of publicly available information and transcripts regarding David's guilty pleas. (See Doc. 24 at 1–3). That request is denied. Consideration of that information would not make any difference in the rulings in this Order in any event.

third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." "[W]hile Rule 14 provides the procedural mechanism for the assertion of a claim for contribution or indemnity, there must also exist a substantive basis for the third-party defendant's liability." Kim v. Fujikawa, 871 F.2d 1427, 1434 (9th Cir. 1989). Thus, "[i]mpleader is appropriate only when a right to relief exists under applicable substantive law." Green Mountain Fin. Fund LLC v. Lacroix, No. 1:09-cv-01216-SEB-TAB, 2013 WL 6062145, at *1 (S.D. Ind. Nov. 18, 2013).

Here, Trooper Evans must "show that [he] has the right to sue [David] for derivative liability for [Plaintiffs'] claims against" Trooper Evans. Reynolds v. Centimark Corp., No. C12-0488 RSM, 2013 WL 2384340, at *2 (W.D. Wash. May 29, 2013). Trooper Evans asserts a claim for contribution, and thus "[t]he substantive merit of the action depends on the federal or state theory of contribution . . . asserted in the third-party complaint." Crews v. Cty. of Nassau, 612 F. Supp. 2d 199, 204 (E.D.N.Y. 2009).

In the Amended Third-Party Complaint, Trooper Evans does not identify the basis of his contribution claim or specify whether it is grounded in federal or state law. David asserts in his motion to dismiss that neither federal nor Florida law provides a right of contribution here. The Court agrees, and therefore Trooper Evans's Amended Third-Party Complaint fails to state a claim for which relief can be granted and must be dismissed.

### A.    Federal Law

There is no controlling precedent on the issue of whether § 1983 or federal common law provides a right to contribution in § 1983 cases. However, the vast majority of courts to address this question have found no such right under either source. See, e.g., Crews v. Cty. of Nassau, 612 F. Supp. 2d 199, 208 (E.D.N.Y. 2009) (noting majority view and collecting cases). District courts within this circuit have followed the majority view. See

Burton v. City of Adairsville, No. 4:14-CV-0099-HLM, 2014 WL 12543885, at *4 (N.D. Ga. Sept. 22, 2014); State Nat'l Ins. Co. v. White, No. 8:10-cv-894-T-27TBM, 2011 WL 5854427, at *4 (M.D. Fla. Nov. 18, 2011); Katka v. Mills, 422 F. Supp. 2d 1304, 1308–09 (N.D. Ga. 2006).

In asserting that federal law provides him a right to contribution, Trooper Evans relies largely on Miller v. Apartments & Homes of New Jersey, Inc., 646 F.2d 101 (3d Cir. 1981). In that case, the Court of Appeals for the Third Circuit held that "in federal civil rights cases, where one or more defendants have settled with a plaintiff, the damages recoverable by that plaintiff shall be reduced by the amount of the settlement received." Id. at 110.[4] The Miller court referred to "a fair uniformity in favor of allowing contribution among the few courts which have considered the question of contribution under the civil rights acts." Id. at 106 (citing cases). However, Miller has been called into question and criticized by courts outside the Third Circuit.[5] See, e.g., Harris v. Angelina Cty., Tex., 31 F.3d 331,

––––––––––––––––––––––

[4] The Miller court stated in a footnote:

This case deals only with the effect of a settlement by one defendant in a tort case upon the liability of non-settling defendants. It does not deal directly with problems of contribution among joint tort-feasors. However, the two problems are so intertwined that they cannot sensibly be treated in isolation. At some points in this decision the rules governing these problems will be referred to as "contribution rules" for simplicity.

646 F.2d at 105 n.5.

[5] Trooper Evans asserts in his response memorandum that "[i]n addition to Miller . . . various other courts have held that a right of contribution exists under federal law and applies to § 1983 cases." (Doc. 24 at 9). Trooper Evans then cites two district court cases from within the Third Circuit. In those cases, the district courts noted that they were constrained to follow Miller. Alexander v. Hargrove, No. CIV. 93-5510, 1994 WL 444728, at *3 (E.D. Pa. Aug. 16, 1994); Klaitz v. New Jersey, Civil No. 04-529(RBK), 2006 WL 1843115, at *6 (D.N.J. June 30, 2006) ("However, it is clear that Miller has never been overturned in the Third Circuit, and given the broad deference that cases like Fishman [v. DeMeo, 604 F. Supp. 873 (E.D. Pa. 1985)] and Alexander have afforded the Miller decision

338 n.9 (5th Cir. 1994); <u>Gray v. City of Kansas City</u>, 603 F. Supp. 872, 875 (D. Kan. 1985). <u>Miller</u> was decided at around the same time the Supreme Court issued two opinions regarding contribution rights under other federal statutes, and the majority view regards <u>Miller</u> as inconsistent with those cases.  This Court agrees with the courts adopting the majority view.

Two days before <u>Miller</u> was issued, the Supreme Court decided <u>Northwest Airlines, Inc. v. Transp. Workers Union of America, AFL-CIO</u>, 451 U.S. 77 (1981).  There, after a class of female airline cabin attendants obtained a judgment against the airline for violations of the Equal Pay Act and Title VII of the Civil Rights Act of 1964, the airline filed suit against two unions for contribution.  The Supreme Court held that neither statute provided a right of action for contribution and that there was no federal common law right to contribution.

The <u>Northwest Airlines</u> Court noted that "[a]t common law there was no right to contribution among joint tortfeasors" but that "[i]n most American jurisdictions . . . that rule has been changed either by statute or by judicial decision."  451 U.S. at 86–87.  The Court then explained that a federal contribution right might "have been created in either of two ways"—by Congress in a statute, either expressly or impliedly; or as "part of the federal common law through the exercise of judicial power to fashion appropriate remedies for unlawful conduct."  <u>Id.</u> at 90. After noting that neither the Equal Pay Act nor Title VII expressly creates a right to contribution in favor of employers, the Court concluded that neither statute created such a right by implication either.  In examining whether an implied

in situations with different factual postures, the Court does not find it appropriate to conclude that there is no federal common law right to contribution in this case.").

right existed, relevant factors are "the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies." Id. at 91. The Court noted that employers are not "members of the class for whose especial benefit the Equal Pay Act or Title VII was enacted" and that "[t]o the contrary, both statutes are expressly directed against employers." Id. at 92.

Turning to the federal common law issue, the Northwest Airlines Court emphasized that federal courts "are courts of limited jurisdiction that have not been vested with open-ended lawmaking powers" and that "once Congress addresses a subject, . . . the task of the federal courts is to interpret and apply statutory law, not to create common law." 451 U.S. at 95 & n.34. The Court noted it had not recognized a general federal right to contribution outside the context of admiralty—a "narrow exception to the limited lawmaking role of the federal judiciary." Id. at 95–96 (discussing Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106 (1974)). The airline's liability was "entirely a creature of federal statute," and the Court concluded "that it would be improper for [it] to add a right to contribution to the statutory rights that Congress created in the Equal Pay Act and Title VII." Id. at 97–98. It thus refused to recognize a contribution right as part of federal common law.[6]

---

[6] One of the cases cited by Miller—Glus v. G.C. Murphy Co., 629 F.2d 248 (3d Cir. 1980)—found that a right to contribution existed in federal common law arising from Title VII. However, the United States Supreme Court vacated the judgment in Glus and remanded for further consideration in light of Northwest Airlines. Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C. Murphy Co., 451 U.S. 935 (1981). On remand, the Third Circuit vacated those portions of Glus that were inconsistent with Northwest Airlines. Retail, Wholesale & Dep't Store Union, AFL-CIO v. G.C. Murphy Co., 654 F.2d 944 (3d Cir. 1981).

A month after both Miller and Northwest Airlines, the Supreme Court again addressed the issue of contribution rights, this time in the context of federal antitrust laws. In Texas Industries v. Radcliff Materials, Inc., 451 U.S. 630 (1981), a party against whom a judgment for antitrust violations was entered sought contribution from other participants in the unlawful conspiracy. The Supreme Court found no express or implied contribution right in the antitrust laws and again refused to create a contribution right as a matter of federal common law.

The Texas Industries Court noted that instances where federal common law may appropriately be created "are 'few and restricted' and fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests' and those in which Congress has given the courts the power to develop substantive law." 451 U.S. at 640 (internal citations omitted) (quoting Wheeldin v. Wheeler, 373 U.S. 647, 651 (1963), and Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 426 (1964)). The Court explained that "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." Id. at 641 (footnotes omitted). Noting that "contribution among antitrust wrongdoers does not involve" any of these areas, and concluding that Congress did not, in the antitrust laws, empower federal courts to create governing rules of law, the Texas Industries Court found no right to contribution. Id. at 642.

In light of Northwest Airlines and Texas Industries, this Court agrees with the majority view and disagrees with Miller with respect to the existence of a federal

contribution right in § 1983 cases.  Section 1983 does not expressly or impliedly create such a right.  Trooper Evans is not a "member[] of the class for whose especial benefit [§ 1983] was enacted"; instead, § 1983 is "expressly directed against" state actors.  Northwest Airlines, 451 U.S. at 92.  Moreover, Congress has not authorized federal courts to formulate substantive rules in this area, which is not one of the "narrow areas" identified in Texas Industries as appropriate for development of federal common law.  In sum, Trooper Evans has not identified a viable federal source of a contribution right.

> **B.    State Law**

Section 768.31, Florida Statutes, allows for contribution among tortfeasors under some circumstances.  It provides that "when two or more persons become jointly or severally liable in tort for the same injury to person or property . . . there is a right of contribution among them even though judgment has not been recovered against any or all of them."  § 768.31(2)(a), Fla. Stat.  However, "[t]here is no right of contribution in favor of any tortfeasor who has intentionally (willfully or wantonly) caused or contributed to the injury."  Id. § 768.31(2)(c).

In his motion to dismiss, David relies on the "intentional" exception of section 768.31(2)(c) as a bar to a Florida-law-based contribution right in this case.  Trooper Evans, however, argues that the exception does not apply, citing two Supreme Court cases that involved determination of the appropriate statute of limitations in § 1983 cases.  (See Doc. 24 at 11–12).  In Wilson v. Garcia, 471 U.S. 261, 280 (1985), the Supreme Court held "that § 1983 claims are best characterized as personal injury actions" and that therefore a state's personal injury statute of limitations governs.  And, in Owens v. Okure, 488 U.S. 235, 249–50 (1989), the Court held that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or

9

residual statute for personal injury actions" rather than a statute of limitations for particular intentional torts.

Trooper Evans's reliance on <u>Wilson</u> and <u>Owens</u> is misplaced.  Although the <u>Owens</u> Court noted that some § 1983 claims bear little resemblance to common law intentional torts, <u>Owens</u> does not save Trooper Evans from the "intentional" exception in § 768.31(2)(c).  As correctly argued by David, the § 1983 claims that Plaintiffs assert against Trooper Evans involve intentional acts by Trooper Evans.  <u>See</u> 11th Cir. Civ. Pattern Jury Instr. 5.2 (2013) (Fourth Amendment claim instruction requiring a plaintiff to show that the defendant "intentionally committed acts that violated [plaintiff's] federal constitutional right")).  Thus, section 768.31, Florida Statutes, does not provide a contribution right to Trooper Evans, and no other potential source of a state law right of contribution has been identified.[7]

### III.   Conclusion

In accordance with the foregoing, it is **ORDERED** that the Motion to Dismiss Amended Third-Party Complaint (Doc. 23) is **GRANTED** and the Amended Third-Party Complaint (Doc. 16) against David Richard Bachelor is **DISMISSED**.  The Clerk may terminate David Richard Bachelor as a party in this case.

**DONE** and **ORDERED** in Orlando, Florida, on November 7, 2016.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

---

[7] The Court makes no finding as to whether Trooper Evans's contribution claim otherwise would be viable on the facts of this case if a substantive right to contribution existed under either federal or state law. <u>Cf.</u> <u>Northwest Airlines</u>, 451 U.S. at 88 ("In this case, we assume that all of the elements of a typical contribution claim are established.").